# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

2024 Toyota 4 Runner
Texas License Plate Number VCM9446
Vehicle Identification Number JTERU5JR3R6261005

Case No. 26mj6518

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Refer to attachment A.

located in the Southern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

Refer to attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| -CVC 2001, 22350, 23104 | -Hit and run causing injury; Reckless driving causing injury; Violating basic speed law |
| -18 U.S.C. 13 | -Assimilative Crimes Act |

The application is based on these facts:
Refer to affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

John Rinehart — Digitally signed by John Rinehart Date: 2026.10.28 08:59:33 -07'00'

*Applicant's signature*

John C. Rinehart, Police Officer

*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 29, 2026

*Judge's signature*

City and state: San Diego, California

Valerie E. Torres, United States Magistrate Judge

*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, John C. Rinehart, a Police Officer/Accident Investigator with the Marine Corps Base ("MCB") Camp Pendleton Provost Marshal Office ("PMO"), Camp Pendleton, California, being duly sworn, hereby state as follows:

## A. INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following vehicle:

> 2024 Toyota 4 Runner
> Texas License Plate Number VCM9446
> Vehicle Identification Number (VIN) JTERU5JR3R6261005
> Seizure No. PMO # 263312204252
> ("**Subject Vehicle**")

as further described in attachment A, and to seize evidence of crimes, as described in Attachment B, for violations of California Vehicle Code sections 20001, 22350, 23104, which occurred in an area of exclusive federal jurisdiction, by and though the Federal Assimilated Crimes Act, 18 U.S.C. section 13. The requested warrant relates to the investigation and prosecution of Patrick SPENNER ("SPENNER") for hit and run with injuries, reckless driving with injuries, and violating basic speed law on MCB Camp Pendleton. The **Subject Vehicle** is currently in the custody of the Provost Marshal's Office ("PMO") and stored at S&R Towing at 1060 Airport Road, Oceanside, California 92058.

2. The information in this affidavit is based on my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Subject Vehicle**, it does not contain all the information known by me or other officers regarding this investigation. All dates and times described are approximate.

## B. BACKGROUND

3. I am an investigative or law enforcement officer within the meaning of Title 18, U.S.C., Section 2510(7); that is, an officer of the United States, who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the United States Code. I am a Police Officer currently assigned to PMO, Traffic Division,

MCB Camp Pendleton, California, and have been employed with PMO since September 2019. I am currently assigned to the Traffic Division as an Accident Investigator ("AI"). My duties include but are not limited to investigating traffic collisions, enforcing traffic rules and regulations, conducting DUI operations and comprehensive roadside safety checks aboard Marine Corps Base, Camp Pendleton, CA, to ensure roadway safety. I received my initial training at Marine Corps Air Station Miramar Basic Police Officer Course which is accredited by Federal Law Enforcement Training Accreditation ("FLETA"). I have completed both the RADAR course and the LIDAR course through Riverside County Sheriff's Office. I completed a 40-hour Basic Collision Investigations course through San Diego County Sheriff's Office. I have completed a 40-hour Intermediate Traffic Collision Investigations course, an 80-hour Advanced Traffic Collision Investigations course, and an 80-hour Traffic Collision Reconstruction course through Government Training Agency. During the course of my career, I have investigated over 221 traffic collisions.

4. I possess an Associate of Science degree in Administration of Justice-Homeland Security from Palomar College located in San Marcos, California. I possess a Bachelor of Arts degree in Criminology and Justice Studies from California State San Marcos located in San Marcos, California.

5. During my tenure with PMO Traffic Division, I have both assisted and lead multiple investigations, including (but not limited to) cases concerning fatal collisions, DUI collisions, hit and run collisions, and reckless driving collisions. Throughout the conduct of the aforementioned investigations, I have conducted the seizure, preservation, forensic extraction, and/or review of cellular devices and other digital media.

6. The following is based on my own investigation, oral and written reports by other law enforcement officers, database checks, searches, and the results of other investigative methods. I have also spoken with other law enforcement officers about their experiences, and the results of their investigations and interviews.

7. Based on the information below, there is probable cause to believe that a search of the **Subject Vehicle** will contain evidence of the aforementioned crimes, as described in Attachment B.

## C. EXECUTIVE SUMMARY

8. As is further detailed below, SPENNER was operating the **Subject Vehicle** on August 28, 2026, with a passenger in the front seat who was identified as Carlos GUZMAN ("GUZMAN"). While operating the **Subject Vehicle** on MCB Camp Pendleton, for reasons still being investigated, SPENNER failed to maintain positive control of his vehicle, causing the vehicle to go off the roadway/hillside. The **Subject vehicle** rolled over onto its roof and back onto its wheels and continued rolling down the hillside approximately 205 feet before coming to its final uncontrolled resting position in the thick vegetation at the bottom of the hillside. SPENNER failed to immediately report the collision and left the vehicle and injured occupant. SPENNER eventually approached the San Onofre Gate sentries [Law Enforcement] and made a fictitious story about what happened. All times are approximate.

## D. FACTS SUPPORTING PROBABLE CAUSE

*MCB Camp Pendleton PMO Dispatch Receive a 911 call*

9. On or about August 28, 2026, at approximately 12:31 p.m., MCB Camp Pendleton PMO Dispatch received a 911 hang up notification pinging in the vegetation area off Chaisson Drive and attempted to call the number back multiple times with no answer. At approximately 12:40 p.m., PMO units were dispatched out to the area where the call was pinging to search for signs of distress which yielded negative results.

*SPENNER asked for help from Law Enforcement*

10. At approximately 12:55 p.m., SPENNER approached the San Onofre Gate sentries ("The Sentries") wearing a torn olive drab t-shirt and a pair of green digital MARPAT trousers and covered in sweat. SPENNER informed The Sentries that he was out on a run, was over heating and asked for water. The Sentries gave SPENNER a bottle of Powerade and allowed him to sit on a chair in the shade to cool off. SPENNER was seen

on camera sitting on the chair and drinking the Powerade as well as going to the rear of the building to use a hose to spray his face to cool off. At approximately 1:04 p.m., SPENNER was seen walking away from the San Onofre Gate and towards the San Onofre Commissary away from the scene of the accident. At approximately 1:14 p.m., SPENNER flagged me down in the parking lot adjacent to the San Onofre PX and stated he was out on a run and was overheating and asked for a ride to his friend's house down the road. I gave SPENNER a ride to 1301 Anderson Street Unit A, San Clemente, CA 92672 and dropped him off.

*Earlier that day, SPENNER was the driver of the **Subject Vehicle***

11. Based on the Defense Biometric Identification System ("DBIDS"), which collects data of scanned identification cards at gates on Camp Pendleton, and security footage, SPENNER entered MCB Camp Pendleton through the Cristianitos Gate on August 28, 2026, at 11:03 a.m. as the driver in the **Subject Vehicle**.

12. At approximately 11:37 a.m., camera footage showed the **Subject Vehicle** exit the Sierra Training Area adjacent to Chaisson Drive and travel southeast onto Basilone Road.

13. At approximately 11:49 a.m., camera footage showed the **Subject Vehicle** traveling northwest on Basilone Road and stop in the intersection just prior to entering the Sierra Training Area and conduct a U-turn traveling back southeast on Basilone Road.

14. At approximately 12:23 p.m., camera footage showed the **Subject Vehicle** travel northwest on Basilone Road entering the Sierra Training Area and begin to accelerate just prior to exiting the camera view. This footage captures the **Subject Vehicle** approximately 500 feet east of where it went off the roadway.

15. At approximately 12:31 p.m., PMO Dispatch receives a 911 hang up and makes multiple attempts to call the number back with no answer.

16. At approximately 12:55 p.m., SPENNER was seen on camera exiting the Sierra Training Area and causally walking towards the San Onofre Gate sentries. Upon making contact with The Sentries, SPENNER stated he was out on a run and was overheating and asked for some water. SPENNER was seen on camera drinking a

Powerade, sitting on a chair in the shade and hosing himself off with the hose in the rear of the building for approximately nine minutes.

17. At approximately 1:04 p.m., SPENNER causally walked away from the San Onofre Gate traveling on foot southeast on Basilone Road towards the San Onofre Commissary.

18. At approximately 1:14 p.m., SPENNER flagged me down in the parking lot just east of the San Onofre Commissary and stated that he was out on a run and was overheating and needed a ride to his friend's house down the road.

19. At approximately 1:16 p.m., SPENNER was dropped off at the residence of 1301 Anderson Street Unit A San Clemente, CA 92672.

*Reporting of GUZMAN with serious possible broken legs in **Subject Vehicle***

20. At approximately 1:22, DBIDS and camera footage shows JARED LEE ("LEE") enter the San Onofre Gate in a white Jeep and drive towards the Sierra Training Area.

21. At approximately 1:47 p.m., The Sentries were approached by LEE who informed them that GUZMAN was involved in a vehicle collision and was stuck in the front passenger seat with possible broken legs.

22. LEE then proceeded to run back to the scene of the collision and direct PMO and Fire Department to the scene of the collision. The first responder units found the **Subject Vehicle** approximately 205 feet off the roadway and down the hillside resting in thick vegetation. The first responders observed GUZMAN still sitting in the front passenger seat and no occupant in the driver's seat, which led to an initial search of the surrounding vegetation and hillside for a possible ejected driver.

*GUZMAN identified SPENNER as the driver of **Subject Vehicle***

23. Officers on scene asked GUZMAN who was driving and he said SPENNER was driving and assumed he left to go get help. A MARPAT blouse was found with the **Subject Vehicle** with the sergeant rank insignias on the collar and SPENNER nametape.

24. At approximately 2:53 p.m., after PMO was knocking on the door of 1301 Anderson Street Unit A San Clemente, CA 92672, SPENNER exits the residence in jeans and a T-shirt with no socks or shoes on and begins talking to PMO while putting socks and shoes on claiming he just got back from a run.

25. Based on my training and experience, I believe that SPENNER was driving in a reckless manner which caused his vehicle to go off the roadway and travel down the hillside before coming to an uncontrolled stop in thick vegetation. His reckless driving led to his car being totaled and the occupant seated in the front passenger seat to be injured and trapped within the **Subject Vehicle** until first responders arrived. Critical speed scuff marks were observed on the roadway leading up to the tire impressions in the dirt shoulder where the **Subject Vehicle** went off the roadway. Measurements taken from the critical speed scuff marks yielded an estimated speed range from 45 miles per hour to 52 miles per hour. The posted speed limit for this roadway is 25 miles per hour. The EDR data will provide information regarding SPENNER's speed, application of brakes (or lack thereof), and steering input, which will provide information regarding the potentially reckless manner he was driving the **Subject Vehicle** leading up to the collision.

26. Accordingly, I request permission to search the **Subject Vehicle** for data between 12:00 p.m. and 1:50 p.m. PT, on August 28, 2026, as further described in Attachment B.

//

//

//

//

//

//

//

//

//

27. Photos of **Subject Vehicle** at the scene of the accident are provided below:





28. Photos of the **Subject Vehicle** showing some of the damage incurred from the accident are provided below:







## PRIOR ATTEMPTS TO OBTAIN DATA

29. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## METHODOLOGY

30. During the course of the investigation of the instant traffic collision, I identified the **Subject Vehicle** registered to Patrick SPENNER as having been involved in that collision. The **Subject Vehicle** was found, disabled at the scene of the collision with damage consistent with having been involved in the collision. Based on my training and experience, I have developed reliable and credible information which I believe would reasonably lead to the discovery of electronically stored information located in and/or on the **Subject Vehicle** and, when retrieved, would lead to a more reliable and complete analysis of the collision. The **Subject Vehicle** is listed as one of the many vehicles

supported for crash data access and retrieval using the Bosch Crash Data Retrieval (CDR) Tool, a system which I have been trained and certified to use. This listing in the documentation of the CDR Tool suggests there is, may or should be retrievable and relevant crash data stored in one or more systems within the subject vehicle including but not limited to the airbag control module, rollover sensor, powertrain control module, pedestrian protection module or active safety control module. The modules and components would also be considered tangible things within the subject vehicle which may have to be physically removed to access and retrieve the electronically stored data contained within. The Bosch CDR software has a supported vehicle search tool which explains what cables are needed to retrieve the data from the specific vehicles that are supported by Bosch CDR kit. The **Subject Vehicle** is listed as one of many vehicles that are supported by Bosch CDR kit and contains an Airbag Control Module (ACM) under the center tunnel near the dashboard.

31. Available data from Event Data Recorders (EDRs), including the Airbag Control Module (ACM), may include stored real-time driving conditions and other related variables; data specifically related to the use, status, deployment and/or non-deployment of any safety restraint system and/or supplemental restraint system, including information related to the system status and/or the use of seat belts by the driver and passenger, information about the status or performance of any system and/or module in the vehicle, information related to vehicle velocity, change in velocity, vehicle wheel speed, acceleration or rotation over time in any direction, engine speed, braking, sudden stop, or any information related to the performance or status of the throttle, steering, and/or brake systems, or any other system status, to include any information regarding how the driver operated the vehicle. Obtaining such data may require removal of any vehicle component or part which might contain such data.

32. I reasonably believe and assert that the proper and timely preservation of electronically stored data in the **Subject Vehicle** makes those things available for analysis

during the course of the remaining investigation into the subject collision as well as for later reexamination by defendant and/or his representative(s).

33. Those items that are within the scope of this warrant will be copied and retained by investigative agents. Investigative agents will then seal any information from the device that is unrelated to the objective of the warrant and will not further review the information absent an order from the Court.

34. Any government entity that executes a warrant that includes the production of or access to electronic communication/device information shall serve upon, or deliver to by registered or first-class mail, electronic mail, or other means reasonably calculated to be effective, the identified targets of the warrant, a notice that informs the recipient that information about the recipient has been compelled or requested, and states with reasonable specificity the nature of the government investigation under which the information is sought. The notice shall include a copy of the warrant. The notice shall be provided contemporaneously with the execution of the warrant.

## CONCLUSION

35. Based on the facts set forth in this affidavit, and my training and experience as a law enforcement officer, I believe that SPENNER committed offenses enumerated in California Vehicle Code (VC) § 20001, Hit and Run with injuries, California VC §23104, Reckless Driving with injuries, California VC § 22350, Basic Speed Law, and 18 U.S.C. §13, and that there is evidence and/or property related to the crime presently located in the **Subject Vehicle,** as described in Attachment A for the items described in Attachment B.

//

//

//

36. WHEREFORE, I request the Court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the property described in Attachment A, in order to seize the items listed in Attachment B.

John Rinehart Digitally signed by John Rinehart
Date: 2026.10.28 09:02:29 -07'00'

John C. Rinehart, Police Officer/Accident Investigator

MCB Camp Pendleton Provost Marshal Office Traffic Division

Attested to by the applicant in accordance with the requirement of Fed. R.Crim.P.4.1 by telephone on this day of 29th day of October, 2026.

HONORABLE VALERIE E. TORRES

United States Magistrate Judge

## ATTACHMENT A

DESCRIPTION OF PROPERTY TO BE SEARCHED

1. **Subject Vehicle** – The passenger compartment, engine compartment, and all parts and containers therein or part of the following vehicle, to include the airbag control module (ACM); or electronic sensing and diagnostic control module (SDM); or Diagnostic and Energy Reserve Module (DERM); or Restraint Control Module (RCM); commonly referred to as an "event data recorder (EDR)", and the telematics/infotainment system:
    a. The **Subject vehicle** is described as a 2024 Toyota 4 Runner, bearing Texas License plate number VCM9446 and vehicle identification number (VIN) JTERU5JR3R6261005, registered to Patrick SPENNER. The **Subject Vehicle** is currently stored per California Vehicle Code section 22655.5(a) within the secure storage area located at 1060 Airport Road within the City of Oceanside, and County of San Diego, California, S & R Towing storage facility.




TEXAS
VCM-9446

# ATTACHMENT B

## ITEMS TO BE SEIZED

Utilizing electronics equipment and software designed for the purpose, to seize, view, forensically examine, extract, and analyze EDR data for the above-described vehicle for information that constitutes evidence and instrumentalities of California Vehicle Code (VC) §20001, hit and run with injuries, California Vehicle Code (VC) §23104, reckless driving with injuries, California Vehicle Code (VC) §22350, speed too fast for conditions, and Title 18 U.S.C. §13 including:

A. All information stored within the **Subject Vehicle's** recording device (EDR), recorded between 12:00 p.m. and 1:50 p.m. PT, on August 28, 2026; and

For purposes of this warrant, "recording device" is defined as it is in California Vehicle Code section 9951, namely, a device installed by the manufacturer of the vehicle, which does one or more of the following, for the purpose of retrieving data after an accident:

i. Records how fast and in which direction the motor vehicle is traveling.
ii. Records a history of where the motor vehicle travels.
iii. Records steering performance.
iv. Records brake performance, including, but not limited to, whether brakes were applied before, during, or after an accident.
v. Records the driver's seatbelt status.
vi. Has the ability to transmit information concerning an accident in which the motor vehicle has been involved to a central communications system when an accident occurs.